UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DANIEL HORACEK, #218347,                      Case No. 2:15-cv-102

              Plaintiff,                     Hon.  Gordon J. Quist
                                              U.S. District Judge

    v.

MICHAEL MARTIN,

              Defendant.

_____/

## **REPORT AND RECOMMENDATION**

### I.    **Introduction**

This Report and Recommendation addresses Defendant Michael Martin's motion for summary judgment. (ECF No. 166.)

Plaintiff — state prisoner Daniel Horacek — filed suit pursuant to 42 U.S.C. § 1983 on November 4, 2014.  In his verified complaint, Horacek asserted that two employees of the Michigan Department of Corrections (MDOC), Special Activities Coordinator Martin[1] and Marquette Branch Prison (MBP) Chaplain Prisk, retaliated against him for filing a lawsuit by denying Horacek kosher meals from November of 2012 to April of 2013.  Horacek contended that both Prisk and Martin violated his rights under the First Amendment, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Fourteenth Amendment.  Horacek also asserted state

---

[1]    Martin has since retired from the MDOC.  (ECF No. 168, PageID.791.)

law claims of malice and intentional infliction of emotional distress against both Defendants.

On June 19, 2018, this Court held a bench trial with respect to Horacek's claims against Chaplain Prisk and entered judgment in Prisk's favor. (ECF No. 105.) Horacek then amended his complaint, removing any reference to Prisk as a defendant. (ECF No. 154.) Horacek did not alter his claims or allegations against Martin. (*Id.*) Martin now moves for summary judgment. (ECF No. 166.)

Martin says that he never denied Horacek kosher meals. Instead, Martin processed and approved Horacek's November 2012 request for kosher meals in the same manner and at the same pace that he processed all of the religious dietary requests at the time. (ECF No. 167, PageID.636.) Martin says that he approved the request on February 13, 2013, and that he was not responsible for any delay that occurred thereafter. (*Id.*) Ultimately, Martin asserts that he is entitled to summary judgment for the following reasons: (1) Martin's actions were reasonably related to a legitimate penological interests, (2) Horacek was approved to receive, and does receive, kosher meals, (3) Horacek cannot recover monetary damages under the RLUIPA and injunctive relief is moot, (4) Martin did not take an adverse action against Horacek, nor were any of Martin's actions motivated by Horacek's protected conduct, (5) Martin had no involvement in keeping Horacek at MBP through Passover, and (6) Horacek has not shown that he was treated differently from similarly situated persons. (*Id.*, PageID.639-652.) Martin further contends that this

Court should decline to exercise supplemental jurisdiction over Horacek's state law claims. (*Id.*, PageID.652-653.)

The undersigned respectfully recommends that this Court grant Martin's motion for summary judgment because there are no genuine issues of material fact and Martin is entitled to judgment. Martin did not constructively deny Horacek's religious meal request by taking three months to process the request, nor did Martin have personal involvement with keeping Horacek at MBP following its approval. And Horacek has not created a genuine issue as to whether the time Martin took to process Horacek's request was motivated by Horacek's prior lawsuit. With respect to Horacek's Passover-related equal protection claim, Horacek has not established that Martin was personally involved in depriving Horacek of his Passover meals or that Martin acted with discriminatory intent. Finally, there is no state law claim for malice, and Horacek has not set forth facts establishing that Martin engaged in outrageous conduct causing Horacek severe emotional distress.

## II.    Relevant Procedural History

Horacek initially filed suit in the Eastern District of Michigan. (ECF No. 1.) On November 19, 2014, the court granted Horacek leave to proceed in forma pauperis and ordered the U.S. Marshals Service to effectuate service. The U.S. Marshals Service sent waivers of service to Prisk and Martin on December 2, 2014. (ECF Nos. 8, 9.) While Chaplain Prisk executed the waiver sent to him (ECF No. 8), the waiver sent to Martin was returned unexecuted (ECF No. 9). On January 9, 2015, Chaplain Prisk moved to dismiss. (ECF No. 11.) On August 4, 2015, the Eastern District issued

an order denying Prisk's motion to dismiss and transferring the case to this Court. (ECF No. 17, PageID.117.)

On August 5, 2015, U.S. Magistrate Judge Timothy P. Greeley ordered the MDOC to furnish Martin's last known address, so that the U.S. Marshals Service could effectuate service.  (ECF No. 20, PageID.123.)  On April 15, 2016, Horacek moved for default judgment against Martin, or to serve Martin via publication.  (ECF No. 44.)  Judge Greeley denied Horacek's motion, explaining that the Summons had expired, and that Horacek had failed to make any effort to effectuate service of process from August 5, 2015 to April 11, 2016.  (ECF No. 52, PageID.198.)  Horacek objected to this order (ECF No. 54), and his objections were overruled by U.S. District Judge Robert Holmes Bell (ECF No. 56).  Horacek then appealed Judge Bell's order overruling his objections to the Sixth Circuit Court of Appeals.  (ECF No. 58.)  The Sixth Circuit ultimately determined that Judge Bell's order was not final or appealable, and therefore dismissed Horacek's appeal on November 30, 2016.  (ECF No. 60, PageID.225-226.)

On April 3, 2018, Horacek moved for relief from Judge Greeley's order denying default judgment and alternative service, and Judge Bell's order overruling Horacek's objections to Judge Greeley's order.  (ECF No. 74.)  U.S. District Judge Gordon J. Quist, to whom the case had been reassigned, denied Horacek's motion for relief after finding that the motion was untimely and did not raise new issues.  (ECF No. 100, PageID.379.)

On June 19, 2018, the Court held a bench trial on Horacek's claims against Chaplain Prisk. (ECF No. 103 (Minutes of Bench Trial).) On June 21, 2018, the Court issued its findings of fact and conclusions of law, in which it determined that Horacek failed to prove any of his claims against Prisk. (ECF No. 104, PageID.391.) On the same date, the Court entered judgment in favor of Prisk. (ECF No. 105.)

On July 19, 2018, Horacek appealed. (ECF No. 108.) Horacek once again asserted that this Court erred in denying his motion for alternative service with respect to Martin, and the Sixth Circuit once again dismissed Horacek's appeal after determining that the Court had not yet dismissed Martin from the case. (ECF No. 115, PageID.429.) On August 8, 2019, Horacek moved the Court for an order clarifying the disposition of his claims against Martin. (ECF No. 116.) The Court granted Horacek's motion (ECF No. 120) and entered judgment in favor of Martin based on Horacek's failure to effectuate service (ECF No. 121).

On December 30, 2019, Horacek appealed the judgment in favor of Martin. (ECF No. 122.) Because the judgment was a final appealable order, the Sixth Circuit considered Horacek's appeal, and ultimately vacated this Court's judgment in favor of Martin, remanding the case for further proceedings. (ECF No. 129, PageID.516.) In its order, the Sixth Circuit explained that "Horacek's failure to actively pursue service on Martin early on in the case became moot once [Judge Greeley] ordered the MDOC to provide Martin's address to the Marshals Service." (*Id.*, PageID.514.)

On September 28, 2020, the undersigned issued another order requiring the MDOC to furnish Martin's last known address to the U.S. Marshals. (ECF No. 131.)

On December 14, 2020, this Court received a waiver of service executed by Martin. (ECF No. 134.)  Martin now moves for summary judgment.  (ECF No. 166.)

### III.    Relevant Factual Allegations

Horacek identifies as an Orthodox observant Ashkenazic Jew.  (ECF No. 154, PageID.594.)  Proper kosher observance is a basic and crucial tenant of Horacek's faith.  (*Id.*)  This is especially true during Passover, which Horacek describes as "one of the holiest Jewish holidays and mandated in the Torah to be strictly and properly observed by a Jew."  (*Id.*, PageID.594-595.)  Horacek says that the Passover Seder is "a religious ritual/meal crucial to an observant Jew."  (*Id.*, PageID.595.)

In 2007, Horacek filed a lawsuit against former Special Activities Coordinator David Burnett, alleging that Burnett violated Horacek's constitutional rights by denying his request for a kosher diet.  (*Id.*)  The case ultimately settled.

After Horacek was released from prison in 2009, he accepted a volunteer position as a Jewish prisoner rights advocate for Michigan.  (*Id.*)  It was in this position that Horacek first became acquainted with Martin, who served as the MDOC's Religious Program Director at the time.  Horacek says that he and Martin frequently disagreed, and that their relationship was often confrontational.  (*Id.*)

On October 31, 2012, Horacek says that he arrived at the Egeler Reception and Guidance Center (ERGC) to begin a new term of incarceration with the MDOC.  (*Id.*, PageID.596.)  When Horacek arrived at ERGC, Horacek sent the facility chaplain, Chaplain Bashir, a request to be placed on a kosher diet.

6

Horacek says that he was called to Chaplain Bashir's office on November 10, 2012, where the Chaplain administered a sincerity test for the kosher diet. (*Id.*) Horacek says that he passed, and that Chaplain Bashir informed Horacek that he would forward the results and recommendation that Horacek be placed on a kosher diet to Martin, who now served as the Special Activities Coordinator, immediately. (*Id.*) Chaplain Brashir recommended approval on November 11, 2012. (ECF No. 167-3, PageID.672 (Chaplain's Recommendation).) On the same day, Horacek says that he was called back to Chaplain Bashir's office to speak with Martin. (ECF No. 154, PageID.596-597.) During this conversation, Horacek says that Martin mentioned that Martin was "well aware" of Horacek's faith, and that he remembered Horacek's prior lawsuit about the denial of his kosher meals. (*Id.*) Horacek says that when he expressed concern that he would be sent to a facility that does not serve kosher meals in retaliation for his earlier lawsuit and his role as the Jewish prisoner rights advocate for Michigan, Martin assured Horacek that Horacek would be "immediately placed at a facility that had a kosher diet available." (*Id.*, PageID.597.) But Horacek was later transferred to Marquette Branch Prison (MBP) in Marquette, Michigan, a facility that does not serve kosher meals.[2]

When Horacek arrived at MBP, he contacted the Assistant Resident Unit Supervisor (ARUS) for his housing unit, ARUS Marshall, and informed him that he

---

[2]    The Parties dispute the date that Horacek was transferred. Horacek says that he was transferred on November 12, 2012. (ECF No. 154, PageID.597.) Martin says that Horacek was transferred on December 3, 2012. (ECF No. 167, PageID.634.) Horacek's Program Classification Report, Martin's Exhibit E, reflects that Horacek arrived at MBP on December 3, 2012. (ECF No. 167-6, PageID.697.)

needed a kosher diet. (*Id.*) Horacek says that ARUS Marshall checked Horacek's transfer order, and that it had been issued just the day before. (*Id.*, PageID.597-598.) The ARUS allegedly told Horacek that it looked like Horacek had "pissed someone off in Central Office." (*Id.*, PageID.598.) ARUS Marshall told Horacek that the ARUS had no say in transferring prisoners, but that Horacek should correspond with the MBP Chaplain, Chaplain Prisk, about his need for a kosher diet. Horacek says that he immediately sent Chaplain Prisk written correspondence regarding his needs. (*Id.*)

Over the next six months, Horacek says that he sent repeated requests to Martin and Prisk to transfer him to a facility that served kosher meals. But Horacek says that he never received responses. (*Id.*) Horacek says that ARUS Marshall also contacted Martin and Prisk to no avail. On one occasion, ARUS Marshall allegedly told Horacek that Chaplain Prisk had informed the ARUS that Horacek would be called out for a personal meeting; that meeting never happened. (*Id.*, PageID.599.) During this time, Horacek says that he was forced to pick through his general population meals for kosher food and supplement the pickings with the only affordable kosher food from the commissary: junk food. (*Id.*, PageID.601.) Eventually, Horacek was forced to consume non-kosher foods. (*Id.*) On January 14, 2013, Horacek filed a grievance regarding the denial of his kosher diet. (*Id.*, PageID.600.)

On March 10, 2013, Horacek sent a written communication to Prisk, informing Prisk that he needed special kosher foods for Passover. (*Id.*, PageID.599.) After Prisk

failed to respond, Horacek sent follow-up communications on March 15, 2013, March 18, 2013, and March 26, 2013.  (*Id.*)  Horacek also sent communications to Martin on March 15, 2013 and March 26, 2013.  (*Id.*, PageID.600.)  Horacek never received responses, nor did he receive kosher meals for Passover.

On March 29, 2013, Horacek filed another grievance regarding the denial of kosher food for Passover.  On April 3, 2013, Horacek was transferred to a facility that served kosher meals and began receiving kosher meals.  (*Id.*)

Horacek contends that unlike Jewish prisoners during Passover, Muslim prisoners are provided with special meals during Ramadan without being approved for religious meals.  (*Id.*, PageID.595-596.)  He says that Muslim prisoners can obtain Ramadan meals at any MDOC facility, as long as they submit a written request in advance.  (*Id.*, PageID.596.)

Martin does not contest that Horacek was transferred from ERGC to MBP, a facility that does not serve kosher meals.  Nor does Martin contest that Horacek began receiving kosher meals in April of 2013.  However, Martin sets forth a few key facts with respect to his former position and the approval process for kosher meals.

As the Special Activities Coordinator, Martin says that his duties included "coordinating religious programming, volunteer programming, general and law library services, prisoner organizations, and leisure time programming."  (ECF No. 168, PageID.792 (Martin's Affidavit).)  As a part of coordinating religious programming, Martin says that he was responsible for processing all religious meal requests.  (*Id.*)  Martin says that he reviewed religious meal requests in the order

that the requests were submitted.  (*Id.*, PageID.793.)  Martin ultimately approved Horacek's request for kosher meals on February 13, 2014.  (*Id.*, PageID.792.)

Once Martin approved religious meal requests, he says that he sent a memorandum to the staff of the facility where the prisoner was confined, and either asked that they begin providing the prisoner with religious meals or arrange to transfer the prisoner to a facility that served religious meals.  After sending the memorandum, Martin says that he had no control over when or where the prisoner was transferred.  (*Id.*, PageID.793.)

Instead, Martin says that Horacek's transfer was delayed due to an MDOC-wide restriction on transferring prisoners for the sole purpose of receiving kosher meals in the weeks leading up to Passover.  (ECF No. 169, PageID.797 (Affidavit of Herbert Berry).)  Martin says that the restriction is put in place every year, in order to manage costs associated with Passover meals, which are ten times more expensive than regular prisoner meals.  (*Id.*)

In contrast to Jewish prisoners during Passover, Martin says that Muslim prisoners who fast during Ramadan receive bagged meals to take to their cells and eat during nighttime.  (*Id.*, PageID.798.)  Those meals either come from the Ramadan menu, the vegetarian menu, or the religious diet menu.  If the meals come from the religious diet menu, the prisoner has to be preapproved to receive religious meals.  (*Id.*)

## IV.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V.    Free Exercise

Horacek first asserts that Martin violated his First Amendment right to freely exercise his religion[3] when Martin denied Horacek kosher meals from November of

---

[3]    Horacek's amended complaint sets forth his first claim as the "[v]iolation of the First Amendment right to freedom and exercise of religion, right to petition for redress of grievances, right of access to court."  However, Horacek does not allege that Martin intended to interfere with Horacek's access to the courts, nor that Martin's conduct caused actual injury to pending or contemplated litigation. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).  In addition, neither Martin nor Horacek addresses an access to courts claim in their briefs regarding summary judgment.  As such, it does not appear that Horacek actually intended to assert an access to courts claim.

2012 to April of 2013, including during the Jewish holiday of Passover.  (ECF No. 154, PageID.593, 601-602.)

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish a violation of his First Amendment rights, Horacek must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001).

But even if Horacek can make these showings, prison officials may impinge on a prisoner's constitutional right to exercise First Amendment religious beliefs if their actions are "reasonably related to legitimate penological interests."  *Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1.    does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2.    are there alternative means of exercising the right that remain open to prison inmates;

12

3.    the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4.    whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors.  *Flagner*, 241 F.3d at 484 ("A regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." (quoting *Turner*, 482 U.S. at 89-90)).

If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest.  *Flagner*, 241 F.3d at 484 (citations omitted).  It should further be noted that the Turner standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."  *Id.*  Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest.  *Id.* "However, 'if an inmate claimant can point to an alternative that fully accommodates

13

the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.'" *Id.* at 484 (quoting *Turner*, 482 U.S. at 91.)

Here, Martin does not contest that a kosher diet is religious within Horacek's "scheme of things," that Horacek's belief is sincerely held, or that the approval process for kosher diets infringes upon Horacek's beliefs.  (ECF No. 167, PageID.640.) Instead, Martin asserts that the approval process is reasonably related to the legitimate penological interest of controlling costs.  (*Id.*, PageID.642.)

But Horacek does not contest that the approval process for kosher diets, set forth in MDOC Policy Directive (PD) 05.03.150 ¶PP, is reasonably related to the MDOC's legitimate interest in controlling costs related to special diets. (ECF No. 187, PageID.886 ("Plaintiff has no dispute with the MDOC sincerity test.").)  Indeed, courts in the Sixth Circuit have repeatedly found that "[p]rison officials have a legitimate penological interest . . . in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program." *Berryman v. Granholm*, 343 F. App'x 1, 6 (6th Cir. 2009); *see also McGraw v. Riley*, No. 2:06-CV-200, 2007 WL 2479471 (W.D. Mich. Aug. 28, 2007) ("Defendants have the right to ensure that each prisoner is sincere in his belief before allowing him access to the Kosher Meal Program."); *Santos v. Chambers-Smith*, No. 2:19-CV-2984, 2020 WL 4434866, at *3 (S.D. Ohio Aug. 3, 2020) ("Here, Defendants set forth legitimate reasons for the ODRC's policy limiting kosher meals to those inmates who hold a sincere belief . . . : namely, containing prison costs and maintaining discipline

14

among prisoners.").  Instead, Horacek says that Martin caused unreasonable delay in the processing and approval of his religious meal request, and that the delay was a constructive denial of his right to freely exercise his religion.  (ECF No. 187, PageID.886 (citing *Byrd v. Haas*, 17 F.4th 692 (6th Cir. 2021).)  Horacek says that the typical timeframe of the approval process is days, not months, and that Martin processed other prisoners' requests before Horacek's.  (*Id.*, PageID.887.)  Martin contends that that he did not cause unreasonable delay resulting in the constructive denial of Horacek's kosher meals.

In *Byrd v. Haas*, a plaintiff incarcerated with the MDOC made a request for religious property and services. 17 F.4th at 694. Despite the seemingly straight-forward policy governing religious property requests, it took the MDOC nearly six years to respond.  *Id.* at 696.  The court determined that the unreasonable delay amounted to a denial of the requests.  *Id.* at 699.  But in doing so, the court emphasized that "constructive denials are—and should remain—rare."  *Id.* at 698. Only in unusual cases, after considering circumstances such as "the length of delay, any reasonable justification for the delay, and the nature of the interest involved" should a court find that officials have constructively denied a prisoner's religious requests.  *Id.* at 699.

Here, the record reflects that it took Martin only three months — from November 11, 2013 to February 13, 2014, to grant Horacek's request to be placed on the Kosher Meal Program.  (ECF No. 154, PageID.596; ECF No. 167-10, PageID.720 (Memorandum Approving Horacek's Request).)    As the Special Activities

Coordinator, Martin was tasked with reviewing all of the religious dietary requests submitted by prisoners in MDOC custody, as well as performing various other duties. (*Id.*, PageID.168, PageID.792.)  When Horacek filed a grievance regarding his dietary request in January of 2013, the Step I Respondent contacted Martin, and Martin explained that he had received more requests in 2012 than ever before and that he was processing "the requests as quickly as possible.  (ECF No. 167-16, PageID.754 (Step I Grievance Response).)  Though Horacek provides evidence that Martin was able to process religious meal requests at a different pace in 2010 (ECF No. 187-3, PageID.913 (Memorandum Approving Prisoner Shaykin's 2010 Religious Meal Request)) and 2015 (ECF No. 187-2, PageID.912 (Record of Horacek's 2015 Religious Meal Approval)), that evidence does not demonstrate that Martin lacked diligence in processing Horacek's 2012 religious meal request.[4]

---

[4]     To the extent that Horacek relies on the unsworn statement signed May 3, 2022 (ECF No. 187-1, PageID.909), that statement does not have the same effect as a sworn statement; Horacek did not comply with 28 U.S.C. § 1746(2).  Even if the undersigned could consider the purported affidavit, the undersigned cannot consider inadmissible hearsay such as Horacek's assertion that he interviewed as many as fifty prisoners to determine the normal timeframe for processing religious meal requests.  *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir.1997).

To the extent that Horacek relies on the statements throughout his response brief, Horacek was required to establish that his statements were made on personal knowledge.  Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  For example, Horacek did not establish that the following assertions were made on personal knowledge: the timeframe for religious diet approvals was "days and not months" (ECF No. 187, PageID.887); MDOC facilities providing kosher meals were not often at capacity (*id.*, PageID.888); there was no restriction on the transfer of prisoners prior to Passover (*id.*, PageID.890); and Martin was responsible for depriving Horacek of his Passover meals (*id.*).

16

Moreover, although it took another three months for Horacek to receive kosher meals, and though that additional three months encompassed the Jewish holiday of Passover, Martin provides that he was not involved in the additional period of delay. Horacek does not provide evidence to the contrary. The emails provided by Martin show that once Martin approved Horacek for the Kosher Meal Program, Chaplain Prisk emailed prison staff. (ECF No. 167-11, PageID.722.) In response, staff informed Prisk that Horacek would not be transferred until April 2, 2013, attaching an email from an MDOC employee that read:

> Please refrain from routine transfers of prisoners with approved Kosher meals until the completion of Passover April 2nd.
> Prisoners may still transfer for custody/security and medical needs.
> Any transfers scheduled as of this date may proceed, as long as the receiving facilities are able to account for the prisoners for ordering purposes.

(*Id.*, PageID.722-723.) And the affidavit of Northern Region Food Services Manager Barry affirms that, because Passover meals cost ten times the amount of regular prisoner meals, MDOC facilities are asked to refrain from transferring prisoners who are newly approved for kosher diets in the weeks leading up to Passover. (ECF No. 169, PageID.797.) "A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct." *Adams v. Burnett*, No. 206-CV-72, 2007 WL 329992, at *6 (W.D. Mich. Jan. 31, 2007).

Ultimately, the undersigned finds that Horacek has failed to create a genuine issue of material fact with respect to the processing of his religious dietary request. The record reflects that the time for processing resulted from an influx of religious

dietary requests, paired with the management of Martin's various responsibilities as the Special Activities Coordinator; this is not a rare case of constructive denial.  As such, the undersigned recommends that the Court grant Martin's motion for summary judgment with respect to Horacek's free exercise claim.

## VI.    RLUIPA

In addition to asserting that the time Martin took to process his kosher meal request violated his free exercise rights, Horacek asserts that Martin violated the Religious Land Use and Institutionalized Persons Act.  (ECF No. 154, PageID.593.)

In relevant part, the RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc-1(a).

Horacek requests declaratory relief, monetary damages, and costs and fees. (ECF No. 154, PageID.603.)  Though he references injunctive relief at the beginning of his Complaint, Horacek does not appear to actually request injunctive relief.  (*Id.*, PageID.593.)  Nevertheless, none of these forms of relief are available to Horacek.

Although the RLUIPA permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc–2(a), monetary damages are not available under RLUIPA. *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA.").   And Horacek's requests for declaratory and injunctive relief are moot; Martin approved Horacek's request long before Horacek filed this lawsuit and has since retired from

the MDOC.  *See Cardinal,* 564 F.3d at 789-90 (finding that the plaintiff's RLUIPA claim that he had been transferred to a facility that did not serve kosher meals became moot once he was transferred to a facility serving kosher meals);  *Horacek v. Heyns,* No. 2:13-CV-280, 2016 WL 11263235, at *2 (W.D. Mich. Dec. 15, 2016) (finding that Horacek's claims against prison staff in their individual capacities were moot because the staff no longer held the positions they did when the claims arose), *report and recommendation adopted*, No. 2:13-CV-280, 2017 WL 1190551 (W.D. Mich. Mar. 31, 2017).  As such, the undersigned recommends that the Court grant Martin summary judgment as to Horacek's RLUIPA claim.

## VII.    Retaliation

Horacek next asserts that Martin intentionally delayed processing Horacek's religious meal request to retaliate against Horacek for filing a lawsuit against Martin's predecessor.  (ECF No. 154, PageID.602.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct.  *Id.* To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

19

The Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399.

Here, the undersigned finds that Horacek's claim fails because he has not set forth evidence of a causal connection.  Horacek filed the lawsuit against Martin's predecessor in 2007.  (ECF No. 154, PageID.595.)  Soon thereafter, Horacek was released from incarceration.  But on October 31, 2012, Horacek was again committed to MDOC custody.  (*Id.*, PageID.596.)  Horacek says that he immediately put in a request for a religious diet, and that on approximately November 11, 2012, he had a conversation with Martin over the telephone.  During that telephone call, Martin allegedly stated that he was aware that Horacek observed Judaism, and that he was aware of Horacek's previous litigation.  (*Id.*, PageID.596-597.)  When Horacek expressed concern that he would be retaliated against for that litigation, Martin told Horacek that he would "absolutely not" be retaliated against, and that he would be placed in a facility that served kosher meals.  (*Id.*, PageID.597.)  Horacek says that the same day, he was transferred to a facility that did not serve kosher meals, and that his ARUS informed him that he must have "pissed someone off in Central Office."  (*Id.*, PageID.597-598.)

Horacek did not set forth any statements by Martin indicating that Martin was intentionally delaying processing Horacek's religious meal request because of Horacek's prior lawsuit.  In fact, Martin's statement during the November 11, 2012 phone call indicates the opposite.  Furthermore, this is not a case involving temporal proximity between the protected conduct and alleged adverse action.  *Cf. Hill v. Lappin,* 630 F.3d 468 (6th Cir. 2010) ("[T]his court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive.")  Horacek sued Martin's predecessor in 2007; Horacek submitted the religious meal request at issue in November of 2012.  And a prison official's speculation that Horacek "pissed someone off in Central Office" is not evidence that Martin was motivated by Horacek's prior lawsuit.  Ultimately, Horacek does not set forth any facts from which a reasonable jury could determine that Martin intentionally delayed processing Horacek's request because Horacek filed a lawsuit five years prior.

Because the undersigned finds that Horacek has not set forth sufficient evidence of causation, it is unnecessary to determine whether taking three months to process a religious meal request constitutes an adverse action.  But the undersigned notes that under the circumstances here, it likely does not.  As set forth above, one way that the MDOC controls costs at its facilities is through its religious meal approval process.  That process involves multiple steps and multiple prison staff.  *See* PD 05.03.150 ¶PP.  Prisoners do not receive religious meals until and unless the Special Activities Coordinator approves their requests.  *Id.* While inconvenient to the

prisoners with sincerely held religious beliefs, this process is routine; routine inconveniences of prison life generally do not rise to the level of adverse action. *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011).  And, as established above, nothing in the record reflects that the time it took Martin to process Horacek's meal request was extraordinary.

Ultimately, because Horacek has not created an issue of fact as to whether his previous lawsuit motivated Martin to delay processing his religious meal request, the undersigned recommends that the Court grant Martin's motion for summary judgment with respect to Horacek's retaliation claim.

## VIII.  Equal Protection

Finally, Horacek seems to assert that his equal protection rights were violated when he was denied Passover meals at MBP because Muslim prisoners can obtain Ramadan meals at any MDOC facility without prior approval.  (ECF No. 154, PageID.593, 595-596.)

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

22

To prove an equal protection claim, Horacek must demonstrate "intentional and arbitrary discrimination" by the state; that is, [he] must demonstrate that [he] "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011).

Once again, Horacek has not established Martin's personal involvement with the denial of his Passover meal requests.  Martin approved Horacek's request to be placed on the Kosher Meal Program on February 13, 2013, nearly six weeks before Passover began.  (ECF No. 167-10, PageID.720.)  Martin provided that he had no control over when and where Horacek was ultimately transferred.  (ECF No. 167-9, PageID.716.)  Nothing in the record reflects that Martin intentionally discriminated against Horacek because of his membership in a protected class.  Accordingly, the undersigned recommends that the Court grant Martin's motion for summary judgment with respect to Horacek's equal protection claim.

## IX.    State Law Claims

Horacek also sets forth claims of "malice" and "intentional infliction of emotional distress."  (ECF No. 154, PageID.593.)

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182

(6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Horacek filed suit on November 4, 2014, more than seven-and-a-half years ago. (ECF No. 1.)  Martin waived service on December 3, 2020, more than one-and-a-half years ago.  (ECF No. 134.)  The motion pending before the Court is not a motion to dismiss pursuant to Fed. R. Civ. P. 12, but a motion for summary judgment under Fed. R. Civ. P. 56. *Cf. Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244 (6th Cir. 1996) ("The vast majority of pretrial dismissals, such as dismissal on a motion for summary judgment, do not affect the trial court's ability to resolve supplemental claims.  But there are two types of pretrial dismissals that appellate courts have scrutinized closely.  The first is a dismissal under Rule 12(b)(1). . . .  The second . . . is a dismissal under Rule 12(b)(6)."), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998).  Horacek sets forth two purported state law claims.  Under these circumstances, the undersigned believes that the balance of the relevant considerations weighs in favor of the continued exercise of supplemental jurisdiction.  In accordance with that belief, the undersigned respectfully recommends that the Court grant Martin's motion for summary judgment with respect to Horacek's state law claims.

24

First and foremost, as recognized by the Court in its Findings of Fact and Conclusions of Law regarding Horacek's claims against Chaplain Prisk, Horacek cannot establish a claim against Martin for malice because no such claim exists. (ECF No. 104, PageID.390 (first citing *French v. Am. Airlines*, No. 2:08-CV-638 T5, 2009 WL 1578288, at *4 n.32 (D. Utah June 2, 2009); then citing *Livingston v. Kehagias*, No. 5:16-CV-906, 2017 WL 4126979, at *3 (E.D.N.C. Sept. 18, 2017); and then citing *Hashempour v. Ace Am. Ins. Co.*, No. CIV.A. H-12-0181, 2012 WL 3948426, at *8 (S.D. Tex. Sept. 10, 2012)).) For the following reasons, Horacek also cannot establish a claim against Martin for the intentional infliction of emotional distress.

A plaintiff asserting the intentional infliction of emotional distress under Michigan law must show: "(1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." (ECF No. 104, PageID.390 (quoting *Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004)).) "The defendant's conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" (*Id.* (quoting *Walsh*, 689 N.W.2d at 517).)

Horacek has not presented evidence that Martin engaged in outrageous conduct with intent to cause Horacek severe emotional distress. Nor has Horacek presented evidence that Martin recklessly engaged in outrageous conduct resulting in Horacek's severe emotional distress. Instead, the record reflects that Martin did

his job in processing and approving Horacek's religious meal request, but that Horacek was dissatisfied with the amount of time it took Martin to do so. Ultimately, there are no genuine issues of material fact, and no reasonable jury could determine that Martin engaged in conduct "utterly intolerable in a civilized society." *Walsh*, 689 N.W.2d at 517.

## X. Recommendation

The undersigned respectfully recommends that this Court grant Martin's motion for summary judgment because there are no genuine issues of material fact and Martin is entitled to judgment as to all of Horacek's claims.

If the Court adopts this recommendation, this case will be dismissed.

Dated:  August 9, 2022                              /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U.S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).